UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 2:16-cr-00084-JDL |
| | ) |
| MUSTAFA HASSAN, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

On March 16, 2017, Mustafa Hassan was convicted after a jury trial of one count of conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C.A. §§ 841(a)(1), 846 (West 2020). On November 2, 2017, Hassan was sentenced to a term of imprisonment of 84 months, to be followed by a term of supervised release of four years. Hassan now moves for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A)(i) (West 2020), based on the alleged health risks he faces in federal custody due to the COVID-19 pandemic (ECF No. 163). For the reasons that follow, I deny the motion.

## I. LEGAL STANDARD

The compassionate release statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239-41 (codified at 18 U.S.C.A. § 3582(c)-(d) (West 2020)), permits a court to consider a motion for compassionate release brought by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Once a court determines that it may consider a defendant's motion, the court may reduce the defendant's sentence if, after considering the factors set forth in 18 U.S.C.A. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).

Because the policy statement issued by the Sentencing Commission under the compassionate release statute, U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2013), has not been updated since the enactment of the First Step Act, I have previously determined that although I should consider the policy statement, I need not strictly apply it when deciding whether to grant compassionate release.[1] *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *2-3 (D. Me. July 1, 2020); *accord United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *5-7 (2d Cir. Sept. 25, 2020).

## II. ANALYSIS

Hassan argues that compassionate release is warranted because his medical history places him at a high risk of severe illness or death from COVID-19. Before evaluating the merits of Hassan's motion for compassionate release, I address the

---

[1] The policy statement provides that compassionate release should only be granted upon a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13(2). Additionally, an application note to the policy statement delineates four categories of "extraordinary and compelling reasons" warranting compassionate release. *Id.* cmt. n.1. The first three categories concern the defendant's medical condition, age, and family circumstances respectively. *See id.* The fourth is a catchall category encompassing reasons "other than, or in combination with" those outlined in the first three categories, "[a]s determined by the Director of the Bureau of Prisons." *Id.*

2

threshold question of whether he has pursued administrative remedies, which is a prerequisite to judicial action.

## A.   Administrative Remedies

As noted above, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Courts have referred to this provision as a "hybrid requirement" that defendants "either exhaust or wait thirty days." *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). I have previously determined that the hybrid requirement is a non-jurisdictional claim-processing rule. *See Calhoun*, 2020 U.S. Dist. LEXIS 117527, at *5. Although courts generally must enforce the hybrid requirement if the Government properly raises an objection based on a defendant's failure to comply with it, such objections can be waived or forfeited.[2] *Id.* at *5-6 (citing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) and *United States v. Reyes-Santiago*, 804 F.3d 453, 458, 478 (1st Cir. 2015)).

Hassan filed a compassionate release request with the warden at FCI Fort Dix on May 15, 2020. The warden denied his request on May 22, 2020. Hassan then filed a "Request for Administrative Remedy" on June 12, 2020, which the warden denied on June 22, 2020. Hassan filed his original motion for compassionate release with

---

[2] I do not address whether any equitable exceptions may excuse a defendant's failure to comply with the claim-processing rule at issue. *See Fort Bend Cty.*, 139 S. Ct. at 1849 n.5; *Ramirez*, 2020 WL 2404858, at *7 (describing the split of authorities on this issue).

the Court on May 26, 2020 (ECF No. 144). Following the appointment of counsel, Hassan filed an amended motion on August 21, 2020 (ECF No. 163).

Although both parties assert that Hassan has exhausted his administrative remedies, the record indicates that other layers of administrative appeal were open to him. Moreover, Hassan did not wait thirty days after filing his request with the warden before he filed a motion for compassionate release with the Court on May 26. However, well over thirty days elapsed between the date Hassan filed his request to the warden and the date he filed his amended motion to the Court. Additionally, the Government has waived any challenge to Hassan's compliance with § 3582(c)(1)(A)'s hybrid requirement.[3] ECF No. 165 at 2; *see United States v. Belanger*, No. 1:15-cr-00072-JDL, 2020 WL 5351028, at *2 (D. Me. Sept. 4, 2020). Pursuant to the Government's waiver, I proceed to the merits of Hassan's motion.

**B.    The Merits**

    **1.    Extraordinary and Compelling Reasons**

As explained above, a court may only grant compassionate release if it finds that "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. 18 U.S.C.A. § 3582(c)(1)(A)(i). Hassan argues that extraordinary and compelling reasons exist because he is at a heightened risk of severe illness or death from COVID-19 due to what Hassan asserts to be a "diagnosed and long-term

---

[3] Accordingly, I need not decide three unsettled questions of law presented by Hassan's motion for compassionate release: (1) whether defendants who receive a denial from the Bureau of Prisons may choose to satisfy the hybrid requirement by waiting thirty days or must instead exhaust administrative rights to appeal the warden's decision, (2) whether the thirty-day lapse contemplated by § 3582(c)(1)(A) must be calculated according to the date of the defendant's initial motion or whether it may be calculated according to the date of an amended motion, or (3) relatedly, whether the thirty-day lapse must occur before the defendant may bring a motion for compassionate release or merely before the Court may decide the motion.

gastrointestinal medical condition." ECF No. 163 at 4-5. He also contends that his age and African heritage place him at an increased risk from the virus.

Hassan's medical records indicate that he has been diagnosed with gastroesophageal reflux disease ("GERD"), as well as helicobacter pylori, a chronic bacterial infection.[4] However, Hassan has not established that either of these conditions place him at an elevated risk of severe illness from COVID-19. The COVID-19 guidance issued by the Centers for Disease Control and Prevention ("CDC") does not classify GERD, or any other gastrointestinal condition, as a COVID-19 risk factor. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 21, 2020). Similarly, the studies that Hassan cites suggest only that certain "chronic inflammatory disease[s], comorbidities (such as diabetes mellitus), and the use of glucocordicoids"—none of which Hassan has indicated that he has—may be associated with an increased risk from the virus. *Coronavirus Disease 2019 (COVID-19): Issues Related to Gastrointestinal Disease in Adults*, Sunanda V. Kane et al., available at uptodate.com/contents/coronavirus-disease-2019-covid-19-issues-related-to-gastrointestinal-disease-in-adults/print (last visited Oct. 21, 2020). Like the CDC's guidance, these studies do not indicate that GERD is a risk factor for COVID-19.

---

[4] Although Hassan's medical records dating between 2010 and 2013 suggest that he occasionally had gastrointestinal ailments during that time, such as vomiting and nausea, the source of which were never conclusively diagnosed, there is nothing to indicate that Hassan has experienced those symptoms since 2013.

5

Thus, Hassan has not shown that he is at an increased risk of severe illness from COVID-19 due to his medical condition.

Hassan also contends that his African heritage increases his risk of severe illness from COVID-19. ECF No. 163 at 5-6. It is true that, as a demographic matter, people of color "are being disproportionately affected by COVID-19." *Coronavirus Disease 2019 (COVID-19): Health Equity Considerations and Racial and Ethnic Minority Groups*, Ctrs. for Disease Control and Prevention, www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Oct. 21, 2020). However, the very studies that Hassan cites for this proposition also state that these racial disparities arise from longstanding and systemic social and economic disparities, such as access to healthcare. *See, e.g.*, *id.* As I have previously observed, these studies—and the disparities they assess—"do not suggest that Black individuals are otherwise inherently predisposed to COVID-19 infection and complications." *United States v. Martin*, No. 2:28-cr-00124-JDL, ECF No. 96 at 6-7 (D. Me. Sept. 25, 2020). Thus, they do not aid in assessing the individual medical risk for a person whose medical condition, social situation, and access to healthcare are specifically known. *See id.* I therefore find that Hassan's heritage does not place him at an increased risk of severe illness from COVID-19.

I also note that statistics gathered and updated daily by the Bureau of Prisons indicate that twelve inmates and six staff members are currently testing positive for COVID-19 at FCI Fort Dix, which does weigh slightly in favor of finding extraordinary and compelling reasons. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, available at https://www.bop.gov/coronavirus/ ("COVID-19 Cases" section,

"Full breakdown and additional details" hyperlink) (last visited Oct. 21, 2020). However, because Hassan has not established that he is at a heightened risk of severe illness or complications arising from COVID-19, I conclude that he has not demonstrated extraordinary and compelling reasons to support his release.[5]

### III.  CONCLUSION

For the reasons explained above, Hassan's motion for compassionate release (ECF No. 163) is **DENIED**.

**SO ORDERED.**

Dated this 21st day of October, 2020.

                                                  **/s/ JON D. LEVY**
                                     **CHIEF U.S. DISTRICT JUDGE**

---

[5] Because I conclude that Hassan has not demonstrated extraordinary and compelling reasons within the meaning of § 3582(c)(1)(A)(i), I do not reach the question of whether the § 3553(a) sentencing factors would support granting Hassan's motion.